

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 971 | DATE | 1/15/2004 |
| CASE TITLE | Surgicore, Inc. vs. Trustmark Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Surgicore has failed to demonstrate that any of Trustmark's determinations were arbitrary and capricious. Judgment is entered for defendant, Trustmark. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | JAN 2 0 2004 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SURGICORE, INC., )
)
    Plaintiff, ) No. 02 C 0971
)
v. ) Judge John W. Darrah
)
TRUSTMARK INSURANCE COMPANY, )
)
    Defendant. )

DOCKETED
JAN 20 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Surgicore, Inc., filed suit against Defendant, Trustmark Insurance Company, for outpatient surgical facility charges related to five different insureds pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 *et seq*. The parties have submitted an agreed statement of uncontested facts and trial briefs. Trustmark also filed a response to Surgicore's trial brief. Surgicore failed to file a response to Trustmark's trial brief. Presently before the Court is a ruling on Surgicore's claims.

## BACKGROUND

Surgicore operates an outpatient surgical facility in Chicago, Illinois. Trustmark is an Illinois corporation authorized by the Illinois Department of Insurance to issue group health insurance policies to employees in the State of Illinois. Each of the insurance policies applicable to the instant case grants Trustmark discretionary authority to make claims determinations. Peer Review Network ("Peer Review") is a healthcare utilization review organization that is not affiliated with Trustmark.

Adam Gonzales was insured by Trustmark through his employer's group health insurance. Trustmark received an insurance claim from Surgicore for $6,960.96 in charges for services rendered to Gonzales. The charges billed by Surgicore were for the "excision of toe nail and nail matrix

38

partial or complete and application of xenograft, skin." Gonzales assigned the right to receive payment for the services provided by Surgicore under the insurance policy to Surgicore.

On May 21, 2001, Surgicore's claim was referred to the Special Investigation Unit ("SIU"). Surgicore's claim was subsequently referred to the Peer Review. At Peer Review, a board-certified Doctor of Podiatric Medicine in private practice and Peer Review's Reimbursement Division ("Reviewing Board") reviewed Surgicore's claim for Gonzales. The claim was re-referred to Peer Review on July 11, 2001, with a second page of the operative report that had not been previously provided.

Peer Review provided a report in which the Reviewing Board found that the procedures performed were not included on the acceptable list of procedures to be performed within an Ambulatory Surgery Center ("ASC") or a Freestanding Outpatient Center ("FOC"). The Reviewing Board determined that the subject procedures are routinely performed in a provider's office and require a "clean room" only, not an operating suite. The Reviewing Board found that the itemized list of services, drugs, and supplies contained unusual amounts of items which would not have been appropriate. The Reviewing Board recommended that $262.05 be allowed for the procedures performed.

Trustmark advised Surgicore of its determination that the appropriate charges for the services rendered to Gonzales should not exceed $262.05 and that some of the charges on the bill fell outside reasonable and appropriate parameters. Trustmark paid Surgicore $209.64 for the services rendered to Gonzales. Surgicore appealed Trustmark's claim decision; the appeal was denied. Trustmark advised Surgicore that after further review of the charges, it determined that the procedures

2

performed did not require the use of an ASC and that the procedures could be performed effectively and safely in the provider's office.

Sonya Poston was insured by Trustmark through her employer's group health insurance. Trustmark received a claim from Surgicore for $9,262.35 in charges for services rendered to Poston. Poston assigned the right to receive payment for the services provided by Surgicore under the insurance policy to Surgicore.

On September 7, 2001, Surgicore's claim for Poston was referred to the SIU. The claim was referred to Peer Review on October 4, 2001. The Reviewing Board found that Poston presented "first metatarsal osteotomy with internal fixation, right foot, under MAC anesthesia." The Reviewing Board found that the reasonable and customary charges for the services provided by Surgicore totaled $1,687.55. Based on the Peer Review recommendation, Trustmark denied Surgicore's charges beyond $1,687.55 on the basis that they were not reasonable and customary.

Trustmark paid Surgicore $1,671.52, and Surgicore appealed Trustmark's decision. Trustmark denied the appeal. Surgicore filed an additional appeal. The second appeal was denied based on the lack of any additional information from what was originally reviewed in the original determination.

Rocio Morgado was insured by Trustmark through his employer's group health insurance. Trustmark received a claim from Surgicore for $9,335.22 in charges for services rendered to Morgado. Morgado assigned the right to receive payment for the services provided by Surgicore under the insurance policy to Surgicore.

On June 18, 2001, Surgicore's claim for Morgado was referred to the SIU. The claim was referred to Peer Review on July 19, 2001. The Reviewing Board found that Morgado was diagnosed

3

with "loose body left ankle, hypertrophic synovitis left ankle." The Reviewing Board recommended that $1,436.27 be allowed for the procedures performed on Morgado. The Reviewing Board found that there were several items listed on the itemized bill which were not documented as used in the operative report and which, in their opinion, would be unlikely to be used for the procedure. The Reviewing Board also found that some of the charges that were listed were unreasonable. Based on the Peer Review recommendation, Trustmark denied Surgicore's charges beyond $1,436.27.

After reducing monies for co-insurance, Trustmark paid Surgicore $728.48 for the services provided to Morgado. Surgicore appealed Trustmark's decision, and Trustmark denied the appeal.

Ivon Mendez was insured by Trustmark through her employer's group health insurance. Trustmark received a claim from Surgicore for $6,477.41 in charges for services rendered to Ivon on November 21, 2001. Ivon assigned the right to receive payment for the services provided by Surgicore under the insurance policy to Surgicore.

On December 11, 2001, Surgicore's claim for Ivon was referred to the SIU. The claim was subsequently referred to Peer Review. The Reviewing Board found that Ivon was a 26-year-old female with complaints of painful toenails, with an examination indicating bilateral ingrown toenails, both medial and lateral borders. Surgicore did not provide an itemized list to support its charges. The Reviewing Board found that Ivon's surgery was medically necessary and appropriate. The Reviewing Board also found that, while this type of surgery was usually performed in a podiatrist's office and a surgical center was not required, because the provider decided that the surgical center was more appropriate because the patient required MAC anesthesia, the amount allowed for the services provided was $539.00. The Reviewing Board recommended that $539.00 be allowed for the use of the facility.

Trustmark advised Surgicore of its denial of charges beyond what it determined to be usual and customary and paid Surgicore $337.30. Surgicore appealed Trustmark's decision. Trustmark denied the appeal, finding no new information that would cause modification to the original decision.

David Mendez was insured by Trustmark through his employer's group health insurance. Trustmark received a claim from Surgicore for $5,386.85 in charges for services rendered to David on July 28, 2001. Trustmark received a second claim from Surgicore for $5,554.85 in charges for services rendered to David on August 25, 2001. David assigned the right to receive payment for the services provided by Surgicore under the insurance policy to Surgicore.

Both of Surgicore's claims for David were referred to the SIU and to Peer Review. As to David's July 28 claim, the Reviewing Board found that David presented a "pre-operative diagnosis of onychocryptosis, cellulites, lateral border, left hallux nail." The Reviewing Board found that the only matrix procedure was to clear the lateral borders, i.e. ingrown toenail procedure. The Reviewing Board found that the procedure could be performed safely and effectively in an office or clinic setting using local anesthesia and that the procedure was not listed in the acceptable procedure categories for ASCs and FOCs. The Reviewing Board found that no facility charges were allowable for the procedure performed. Peer Review recommended that no facility charges be allowed, and Trustmark adopted this recommendation.

As to the August 25 claim, the Reviewing Board found that David presented a "pre-operative diagnosis of onychocryptosis, lateral border, right hallux nail." The Reviewing Board found that only local anesthesia-type medication was given and that the list of supplies did not correlate with what would be a mainstream itemized list of necessary supplies. The Reviewing Board found that there were many charges related to the use of permanent equipment as well as supplies, the use of

which was unrelated to a procedure on a nailbed. The Reviewing Board found that it was safe and effective to perform the procedure in an office or clinic setting under local anesthesia and that it was not appropriate to perform the procedure in an outpatient surgical facility. The Reviewing Board found that no facility charges were allowable for the procedure performed. The Reviewing Board recommended that Trustmark not allow any facility charges, and Trustmark adopted this recommendation.

Surgicore appealed both decisions. As to the July 28 claim, Trustmark advised Surgicore that it did not find ample justification to modify its original decision and that it was not changing that determination. As to the August 25 claim, Trustmark advised Surgicore that the procedure could have been performed in an office or clinic setting and that, absent any other documentation substantiating the necessity for the procedure in an outpatient setting, the appeal would be denied. The appeal was subsequently denied.

## ANALYSIS

The denial of benefits challenged under Section 1132(a)(1)(B) is reviewed *de novo* unless the benefit plan gives the fiduciary or administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103 (1989) (*Bruch*). If the plan confers power on the administrator to exercise discretion, the Court's review is the deferential "arbitrary and capricious" one. *Bruch*, 489 U.S. at 111; *Reich v. Ladish Co.*, 306 F.3d 519, 524 (7th Cir. 2002).

The parties do not dispute that the benefit plans of the instant case expressly grant Trustmark discretion and authority to determine eligibility for benefits. Accordingly, Trustmark's decisions will be reversed only if the decisions were arbitrary and capricious.

Under this standard, the Court does not decide whether it would reach the same conclusion or rely on the same authority. *See Mers v. Marriott Int'l Group Accidental Death & Dismemberment*, 144 F.3d 1014, 1021 (7th Cir. 1997) (*Mers*). The court will not set aside the denial of benefits if the denial was based on a reasonable interpretation of the documents. The court's "role is to determine whether the decision was completely unreasonable." *Mers,* 144 F.3d at 1021. As long as the plan administrator makes an "informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, *i.e.*, one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached," the decision of the administrator will be upheld. *See Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990).

Surgicore asserts that Trustmark's decision regarding each of the above claims was arbitrary and capricious.

Specifically, Surgicore argues that Trustmark's "treatment" of Gonzales's claim was arbitrary and capricious. However, Surgicore provides the Court no evidence to support its conclusory argument. Surgicore fails to demonstrate that Peer Review's determinations -- the procedure could have been safely and effectively performed in an office or clinic and the charges reflected unusual amounts of drugs and supplies -- were not appropriate. Trustmark was free to adopt Peer Review's recommendation, and it need not accord special weight to the opinions of Gonzales's treating physicians. *See Black & Decker Disability Plan v. Nord*, 123 S. Ct. 1965, 1972 (2003) (plan administrators need not accord special weight to the claimant's treating physician); *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994) (plan administrator was free to choose between the position of its independent medical consultant and the claimant's treating physician).

Based on the above, Surgicore has failed to demonstrate that Trustmark's adoption of Peer Review's recommendation and the resulting payment for the services rendered was arbitrary and capricious.

Surgicore argues that Trustmark's treatment of Poston's claim was also arbitrary and capricious. In support of its argument, Surgicore contends that Peer Review's report does not contain any factual basis as to why the amount allowed on the claim was so low. However, the Peer Review's report states that Surgicore's operative report lists two "DPMs" as assistant surgeons and that it is not appropriate to have two such assistants and that reimbursement for two assistants was not recommended. Surgicore also listed the customary and reasonable fees associated with the procedure that should be allowed. Surgicore provides no evidence to refute these costs and failed to provide Trustmark with any justification for increasing the amount allowed in its appeal. Accordingly, Trustmark's decision was not arbitrary and capricious.

Surgicore argues that Trustmark's treatment of Morgado's claim was arbitrary and capricious because Trustmark adopted Peer Review's recommendation and ignored another medical reviewer's finding that $7,800.00 was the reasonable and customary fee for the services provided. Surgicore's argument is without merit because the $7,800.00 was not a finding of reasonable and customary charges that should be allowed by a medical reviewer but was the amount that BCE Emergins Bill Review ("BCE"), an organization that negotiates with providers to agree on an adjusted price for services provided, had negotiated with the parties for the services provided to Morgado. However, Surgicore failed to timely accept the negotiated price. Surgicore provides no evidence that BCE conducted any type of medical review of Morgado's claim and made any findings as to the reasonable and customary charges for the procedures provided. Only Peer Review made such a

8

determination, and Trustmark adopted Peer Review's recommendation. Surgicore fails to provide any evidence to rebut Peer Review's determination. Accordingly, Trustmark's determination was not arbitrary and capricious.

Surgicore argues that Trustmark's treatment of the claim of Ivon Mendez and the claim of David Mendez were arbitrary and capricious because Trustmark handled the similar claims differently and failed to take into consideration David's special concerns (pain) that required intravenous sedation.

Peer Review reviewed Surgicore's claims as to Ivon's procedure and David's two procedures. Peer Review allowed payment for Surgicore's use of MAC anesthesia for Ivon but found the use of MAC anesthesia unnecessary and denied payment for its use as to David. Surgicore contends that these two findings are inconsistent and are evidence of Trustmark's arbitrary and capricious handling of the claims. However, the procedures that Ivon and David underwent were not identical; and the medical records submitted for Ivon supported the use of MAC anesthesia, and the medical records submitted for David failed to support the use of MAC anesthesia. Ivon underwent surgery on both feet at the same time, and the medical records indicate that Peer Review agreed with Surgicore's determination to use MAC anesthesia under such a procedure. On the other hand, David's procedures were each done on a single foot at different times. Furthermore, David's concern about pain fails to demonstrate that MAC anesthesia was required or that Trustmark failed to take this concern into consideration when it denied payment for MAC anesthesia. Surgicore fails to provide any evidence that MAC anesthesia was appropriate for David's two procedures. Trustmark's determination to adopt its independent medical reviewer's findings over David's treating physicians does not constitute an arbitrary and capricious decision by Trustmark.

Based on the above, Surgicore has failed to demonstrate that Trustmark's determinations as to Ivon and David's claims were arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, Surgicore has failed to demonstrate that any of Trustmark's determinations were arbitrary and capricious. Judgment is entered for Defendant, Trustmark.

Dated: 1/15/04

JOHN W. DARRAH
United States District Judge